UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL PERKINS,

                              Plaintiff

                                                                   DECISION AND ORDER

-vs-

                                                                     09-CV-6302 CJS

DAVID F. NAPOLI, et al.,

                              Defendants

_____

INTRODUCTION

      Plaintiff, a prison inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), is suing pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his federal constitutional rights. Now before the Court are three applications: 1) a motion for summary judgment (Docket No. 62) by defendant David Napoli ("Napoli"); 2) a motion for preliminary injunctive relief [#80] by Plaintiff; and 3) a motion to dismiss [#85] by all Defendants. For the reasons that follow, Napoli's motion is granted, Plaintiff's motion is denied, and Defendants' motion is granted in part and denied in part, to the extent that Plaintiff's *in forma pauperis* status is revoked and he must pay the filing fee within thirty days or this action will be dismissed.

BACKGROUND

      At all relevant times, Plaintiff was confined at Southport Correctional Facility ("Southport"). At all relevant times, Defendants were employed by DOCCS at

1

Southport. Specifically, Napoli was Superintendent at Southport, Daniel Chapman ("Chapman") was a Corrections Sergeant, and Michael Burgett ("Burgett"), James Cleveland ("Cleveland"), Steve Ford ("Ford"), and David Tadder ("Tadder") were Corrections Officers.

The Amended Complaint [#3] alleges the following facts. On March 9, 2009, Plaintiff was in a holding cell, handcuffed in front with a waist chain, when Tadder "pulled the plaintiff out" and punched him in the face. Plaintiff alleges that he was knocked to the floor, and that Tadder, Burgett, Cleveland, Ford, and Chapman then kicked and punched him. Plaintiff alleges that the officers put him back in the holding cell, and returned ten minutes later to "beat [him] some more." Amended Complaint p. 5.

Plaintiff alleges that the attack on March 9, 2009 was the third time that he had been assaulted by staff at Southport. In that regard, Plaintiff claims that he was assaulted on July 5, 2008 and August 20, 2008, and then again on March 9, 2009. Plaintiff is suing Napoli, on the grounds that Napoli created a policy or custom which permitted staff to assault inmates.

Other documents in the record, including Plaintiff's original Complaint,[1] provide some additional details to his allegations. Plaintiff maintains that on March 9, 2009, he and another inmate, Malik, were in the holding cells in Southport's dental treatment area, awaiting transport back to their cells. Plaintiff states that officers subsequently began escorting him and Malik back to their cells, when Burgett and Tadder

---

[1] *See*, Complaint [#1], Ex. D.

aggressively approached Malik. Plaintiff indicates that he told the officers that they should not approach Malik in that manner, since Malik had not done anything wrong.[2] Plaintiff states that the escort officers took Malik back to his cell, but Tadder directed that Plaintiff be returned to the dental area holding cell. A short time later, Plaintiff contends, the officers removed him from the holding cell and assaulted him.

Defendants counter that on March 9, 2009, Plaintiff was backing out of the holding cell when he quickly moved and attempted to assault Burgett, who then, along with other officers, used appropriate force to subdue Plaintiff. They further contend that Plaintiff refused their orders to stop struggling as they were attempting to control him. Based on that version of events, Burgett issued Plaintiff a Misbehavior Report, charging him with violent conduct, assault on staff, interference with an employee, and refusing a direct order. *See*, Rule 26 Disclosures [#11], Ex. A. At a subsequent disciplinary hearing, Plaintiff was found guilty of all four charges. *Id*.

On June 12, 2009, Plaintiff commenced this action and applied for permission to proceed *in forma pauperis*. Consequently, the Court was required to review his pleadings pursuant to 28 U.S.C. § § 1915 & 1915A. At that time, the Court was unaware that both Plaintiff's original Complaint [#1] and his Amended Complaint [#3] misstated the number of previous prisoner lawsuits that he had filed.[3] Specifically,

---

[2] At deposition, Plaintiff indicated that Tadder aggressively approached Malik because Malik was taunting Tadder. *See*, Pl. Dep. at 19-20.

[3] The Section 1983 form complaint that Plaintiff used, in the section entitled "PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT," states, in pertinent part, "Have you begun *any other lawsuits* in *federal court which relate to you imprisonment*?" (emphasis in original). Notably, the form directs the prisoner plaintiff to attach additional sheets of paper, if necessary, in order to fully list all such lawsuits.

3

Plaintiff listed only one such lawsuit, 08-CV-6248 CJS, which was pending in this Court, while omitting several other lawsuits, which are discussed below. Plaintiff requested permission to proceed *in forma pauperis* because he purportedly had no funds whatsoever. Pl. Motion to Proceed In Forma Pauperis [#2]. Although the Amended Complaint alleges that Plaintiff was assaulted on three occasions at Southport, with the most recent assault having occurred three months earlier, in March 2009, it does not allege that Plaintiff is in any imminent danger of physical harm. On July 14, 2009, the Court granted Plaintiff's application to proceed *in forma pauperis*. *See*, Order (Docket No. [#6]).

Following a period of pre-trial discovery, on June 23, 2010, Napoli filed the subject motion for summary judgment [#62].[4] In support of the application, Napoli maintains that he cannot be liable for the alleged assault on March 9, 2009, because he was not personally involved in the alleged assault.[5] Napoli states that he was not present during the alleged assault, that Plaintiff had never been threatened by any of the Defendants prior to that day,[6] and that Plaintiff had never claimed that he was in danger of being harmed by the Defendants.[7] *See*, Napoli Memo of Law [#66]. Napoli, therefore, contends that Plaintiff cannot show that he was deliberately indifferent to

---

[4] Napoli provided the *pro se* Plaintiff with the *Irby* notice required by Local Rule of Civil Procedure 56.2. *See*, Docket No. [#64].

[5] *See*, Pl. Deposition at pp. 78-79.

[6] *See*, Pl. Deposition at p. 15 (Indicating that he never had a problem with any Defendant prior to March 9, 2009); *see also, id*. at 82.

[7] Plaintiff indicates that he wrote several letters to Napoli, but none that concerned the other Defendants. Plaintiff indicates that on July 5, 2008, he was assaulted by another corrections officer, and he wrote to Napoli about the incident, and later mentioned it to Napoli personally, but Napoli did nothing about his complaint. See, Pl. Dep. at 80-81.

4

Plaintiff's safety.

Plaintiff filed a response [#72] to Napoli's motion. The response is largely devoted to pointing out alleged inconsistencies in reports filed by the corrections officers involved in the March 9th incident. As for Napoli, Plaintiff indicates that Napoli violated Plaintiff's constitutional rights by "allow[ing] his subordinates to assault the plaintiff on several different occasions, and then allowing additional subordinates . . . to conduct an evasive investigation into the complaint made by the plaintiff [concerning the incident on March 9, 2009]." Pl. Response [#72] at p. 15. Plaintiff indicates that inconsistencies in the reports that the corrections officers prepared following the March 9, 2009 incident should have alerted Napoli to the fact that the officers were lying. *Id.* at 17. Plaintiff further contends that Napoli generally allowed his subordinates to violate the rights of inmates. Pl. Dep. at 82-83

On January 12, 2011, Plaintiff filed the subject motion for injunctive relief [#80]. At that time, Plaintiff was housed at Upstate Correctional Facility ("Upstate"). Plaintiff asked the Court to order Upstate to provide him with "extra legal supplies," because he had multiple legal actions pending. Specifically, Plaintiff requested an Order directing officials at Upstate "to provide the Plaintiff with the adequate amount of needed legal materials to continue to prosecute the two pending civil litigations entitled *Perkins v. Napoli, et al.*, 08-CV-6248 and *Perkins v. Napoli, et al.*, 09-CV-6302." Motion for Injunctive Relief [#80] at p.3. Plaintiff indicated that Kenneth E. Wilson, Jr. ("Wilson"), who is apparently the "law library supervisor" at Upstate, had denied him "the needed extra legal supplies." *Id.* at 2. However, Plaintiff did not indicate to what legal supplies he was referring, or why he was entitled to them.

On April 22, 2011, Defendants filed the subject motion to dismiss [#85] the entire action on procedural grounds. Specifically, Defendants indicate that the Court should revoke Plaintiff's *in forma pauperis* status pursuant to 28 U.S.C. § 1915(g), because prior to the date that Plaintiff commenced this action, he had at least three other actions dismissed as being frivolous, malicious, or failing to state a claim. In that regard, the relevant section states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C.A. § 1915(g) (West 2011). For support of the application, Defendants cite an order dated August 18, 2010, by the Honorable Lawrence E. Kahn, United States District Judge for the Northern District of New York in the case *Perkins v. Rock, et al.*, 9:10-CV-0375 (LEK/RFT), which is attached to Defendants' motion. In that case, Judge Kahn found that the "three strikes" provision in § 1915(g) barred Plaintiff from proceeding *in forma pauperis*. In doing so, Judge Kahn relied upon a decision of the Honorable Glenn Suddaby, United States District Judge for the Northern District, which indicated that Plaintiff had at least three "strikes" as of September 18, 2008. *See, Perkins v. Rock* decision at p. 4 (*quoting Perkins v. Rock*, 9:10-CV-0414 (GTS/DEP), Docket No. 9, (N.D.N.Y. Jul. 26, 2010). Significantly, one of the strikes referred to by Judge Suddaby was issued by this Court, in the case of *Perkins v. Doe*, 08-CV-6257 CJS (Fe), Decision and Order dated September 8, 2008. Two other strike dismissals

issued prior to that decision were *Perkins v. NYC Dept. of Corrections*, 94-CV-1613, Judgment (S.D.N.Y. Mar. 10, 1994) and *Perkins v. Morgenthau*, 94-CV-4553, Judgment (S.D.N.Y. Jun. 21, 1994).

In response to the motion to dismiss, Plaintiff admits that the two above-referenced dismissals from the Southern District of New York are "strikes" within the meaning of 28 U.S.C. § 1915(g). However, he contends that this Court's dismissal in *Perkins v. Doe* was not a strike, because that action was dismissed for lack of jurisdiction. Plaintiff is mistaken on that point, though, since the Court dismissed that action for failure to state a claim, inasmuch as Plaintiff had attempted to sue private individuals under Section 1983. *See, Perkins v. Doe*, 08-CV-6257 CJS (Fe), decision at pp. 2-3. It is true that later in the Court's decision, after finding that Plaintiff had failed to state a claim, this Court went on to point out that even if Plaintiff were to attempt to re-plead his claim as a state-law breach of contract action, the Court would lack subject-matter jurisdiction over the action. *Id*. Nevertheless, the actual dismissal was based the Complaint's failure to state a claim upon which relief could be granted.

## DISCUSSION

*Plaintiff's Motion For Preliminary Injunctive Relief*

At the outset, the Court finds that Plaintiff's application for injunctive relief [#80] must be denied. The standard to be applied when considering an application for preliminary injunctive relief is well settled:

> A party seeking a preliminary injunction ordinarily must show: (1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with

> a balance of hardships tipping decidedly in the movant's favor. When the movant seeks a 'mandatory' injunction-that is, as in this case, an injunction that will alter rather than maintain the status quo- [he] must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits.

*Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008) (citations omitted). Violation of a constitutional right is considered "irreparable harm." *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996) ("The district court . . . properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights."); *see also*, *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir.1998) ("In the context of a motion for a preliminary injunction, violations of First Amendment rights are commonly considered irreparable injuries.") (citation and internal quotation marks omitted). Moreover, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker*, No. 00-CV-0912E(SR), 2006 WL 618576 at *3 (W.D.N.Y. Mar. 10, 2006) (citation omitted); *accord, Taylor v. Rowland*, No. 3:02CV229(DJS)(TPS), 2004 WL 231453 at *2-3 (D.Conn. Feb. 2, 2004).

Here, Plaintiff asks the Court to order officials at Upstate to provide him with unspecified "extra legal supplies," so that he can continue to prosecute multiple lawsuits. More specifically, Plaintiff indicated that because he was being denied "extra legal supplies," he would not be able to file a timely reply to defense counsel's response [#76] to a discovery motion that Plaintiff had filed, which reply was due by February 8, 2011. Plaintiff further indicated that such denial of "extra legal supplies" might prevent him from filing a motion for sanctions against Defendants. The Court observes,

however, that on January 12, 2011, Plaintiff filed a motion for sanctions against Defendants, for alleged discovery violations, which the Honorable Jonathan W. Feldman, United States Magistrate Judge, addressed in an Order [#89] issued on September 23, 2011.  Accordingly, it does not appear that Plaintiff was hindered in prosecuting this action by a lack of legal supplies.  In any event, Plaintiff has not made the requisite showing required to obtain injunctive relief, and his application [#80] is denied.

### *Napoli's Motion For Summary Judgment*

Next, the Court will address Napoli's motion for summary judgment.  The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962).  Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  Moreover, since Plaintiff is proceeding *pro se*, the Court is required to construe his submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. See, *e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Additionally, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977).
>
> ***
>
> An individual cannot be held liable for damages under § 1983 "merely because he held a high position of authority," but can be held liable if he was personally involved in the alleged deprivation. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996). Personal involvement can be shown by: evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004); *see also, Platt v. Incorporated Village of Southampton*, 391 Fed.Appx. 62, 2010 WL 3393738 at *3 (2d Cir. Aug. 30, 2010) ("A supervisory official may be personally liable if he or she has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act. Supervisory liability may be imposed where an official demonstrates gross negligence or deliberate indifference to constitutional rights by failing to act on information indicating that unconstitutional practices are taking place. We cannot say, however, that an allegation that a supervisory official ignored a letter protesting past unconstitutional conduct is, without more, sufficient to state a claim that the official was 'personally involved' in the unconstitutional conduct.") (citations and internal quotation marks omitted).[8] It is well settled that "mere linkage in the prison chain of command is insufficient to implicate . . . a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Here, Napoli contends that Plaintiff cannot demonstrate that he was personally involved in any alleged constitutional violation. The Court agrees. In that regard, it is undisputed that Plaintiff had no problems with any of the corrections-officer Defendants prior to March 9, 2009, the day that he was allegedly assaulted by them. It is also therefore undisputed that Plaintiff never alerted Napoli that he was in danger from any

---

[8] Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009), there is some disagreement among district courts in this Circuit as to whether all of the foregoing "*Colon* factors" still apply. *See, e.g., Dilworth v. Goldberg*, 2011 WL 3501869 at * 17 (2d Cir. Jul. 28, 2011) ("*Iqbal* has caused some courts to question whether all five of the personal involvement categories survive that decision.") (collecting cases). It is unclear whether *Iqbal* overrules or limits *Colon*, therefore, in the absence of contrary direction from the Second Circuit, the Court will continue to apply those factors. *See, Platt v, Incorporated Village of Southampton*, 391 Fed.Appx. 62, citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, which sets forth all five of the *Colon* bases for imposing supervisory liability.

of the corrections-officer Defendants.  Accordingly, there is no merit to the idea that Napoli failed to protect Plaintiff from the alleged assault.

Plaintiff nevertheless contends that Napoli is liable in his supervisory capacity, because Plaintiff was assaulted on two prior occasions, many months earlier, by other Southport employees.  Specifically, Plaintiff alleges that he was assaulted on July 5, 2008,[9] August 20, 2008,[10] and that Napoli created a policy or custom which permitted staff to assault inmates.  However, Plaintiff's assertion that such a policy existed, and that Napoli created it or allowed it to continue, are conclusory.[11]  More specifically, apart

---

[9]Plaintiff filed a separate lawsuit concerning this alleged assault, entitled *Perkins v. Shope, et al.*, 08-CV-6324CJS(Fe).  Attached to the Complaint in that action are various records pertaining to the alleged assault and the investigation conducted by Southport officials.  Notably, Napoli does not appear to have been involved in the incident or the investigation.  Instead , it appears that the investigation was overseen by Southport's Deputy Superintendent for Security Services, J. Colvin, and by the Inspector General.  In a subsequent separate lawsuit, *Perkins v. Napoli, et al.*, 08-CV-6248, Plaintiff alleged that on July 7, 2008, two days after the alleged July 5th assault, he "attempted to explain [to Napoli] the violations he was forced to sustain at the hands of his security staff, but Mr. Napoli just turned and walked away as if he condone what his staff does." 08-CV-6248 CJS, Docket No. [#5] at p. 4; *see also, id, docket no*. [#18] at p. 22 ("On or about the 7th day of July, 2008, David F. Napoli (Superintendent) and John C. Colvin (Deputy Superintendent of Security) and John D. Caporiccio (Sergeant) made rounds in D-Block, and the Plaintiff made a verbal complaint pursuant to his being assaulted by the defendants . . . but the three above-named individuals only wanted to know if the plaintiff spit in the face of the defendant correction officer: Scott G. Comfort, and when the plaintiff admitted that he did spit in the face of C.O. Comfort after being assaulted, the Superintendent, Deputy Superintendent of Security and Sergeant displayed their deliberate indifference to the Plaintiff's verbal complaint by disregarding his complaint by [sic] walking away from his cell before he could finish his verbal complaint, and the written complaints forwarded to them: 'Superintendent and Deputy Superintendent of Security.'").  The record in case 08-CV-6248 indicates that as a result of events on July 5, 2008, Plaintiff was charged with a variety of infractions, including assault on staff and violent conduct, found guilty at a disciplinary hearing, and sentenced to 21 months in SHU. See, 08-CV-6248, docket no. [#18] at p. 26.

[10]On October 6, 2008, in the case *Perkins v. Napoli, et al.*, 08-CV-6248, Plaintiff filed an Amended Complaint against officials at Southport, concerning the alleged assault against him in July 2008.  However, conspicuously absent from the Amended Complaint is any mention of an alleged assault in August 2008.  The record in this action contains essentially no information concerning the details of the alleged August 2008 assault.  However, attached to the Complaint in this action is a decision of the Central Officer Review Committee ("CORC"), which alludes to an incident on August 20, 2008, as follows: "CORC notes the grievant [Plaintiff] was involved in a documented use of force on 8/20/08 and issued a misbehavior report for his inappropriate behavior." Complaint [#1-2] at p. 18.

[11]*See, e.g.*, Plaintiff's Motion for Temporary Restraining Order [#4], Affirmation in Support at p. 5 ("[T]he Southport Correctional Facility security staff . . . has a reputation and or history of assaulting inmates whom are confined with restraints."); *id*. at p. 9 ("David F. Napoli has allowed his subordinates to

12

from his own conclusory statements, Plaintiff has not presented any evidence that Napoli had a policy to allow corrections officers to assault inmates.

Plaintiff alternatively argues that Napoli was grossly negligent in supervising his staff, or was deliberately indifferent to Plaintiff's safety, because he failed to act on information that constitutional violations were occurring. In that regard, Plaintiff apparently relies on letters that he wrote to Napoli prior to March 9, 2009, and on the fact that Plaintiff orally complained to Napoli on July 7, 2008. *See*, *footnote 9 above*. However, any letters that Plaintiff may have written to Napoli are not in the record, and they therefore cannot form the basis for personal involvement by Napoli. Similarly, Plaintiff's alleged oral complaint to Napoli on July 7, 2008, in which Plaintiff purportedly complained that he had been assaulted by staff two days earlier, is also insufficient to establish Napoli's personal involvement in the March 9, 2009 incident.[12]

Plaintiff further contends that Napoli violated his constitutional rights by failing to recognize and act upon certain alleged inconsistencies in reports written by corrections officers *after the alleged March 2009* assault. On this point, Plaintiff states that Napoli

> allowed his subordinates to submit bogus to-from reports which are based on hearsay; inconsistent statements of alleged actions and conducts committed during the alleged incident on the 9th day of March 2009; false

---

violate the inmates' of the Southport Correctional Facility constitutional rights on a continued basis, which makes Defendant David F. Napoli guilty pursuant to grossly negligent supervision of his subordinates.")

[12] At the time of such complaint, an investigation was already underway and Plaintiff had the opportunity to defend himself at an upcoming disciplinary hearing. *See, footnote 9 above*; *see also*, *Colon v. Coughlin*, 58 F.3d at 873 ("Colon admits that the letter [to Superintendent Senkowski, complaining that corrections staff had planted contraband in his cell] predated the Tier III hearing. We see no reason why Senkowski should have intervened in advance of an established procedure in which Colon was to be given the opportunity to substantiate the claim that he made in his letter.")

> statements of action and conduct committed during the alleged incident of the 9th day of March 2009; fictitious and inconsistent statements of alleged allegations without any substantiality of facts; and [allowed his subordinates to] conduct evasive questions of inquiry into the facts of the alleged actions committed and/or taken by his subordinates. [sic]

Docket No. [#72] at 16 (Plaintiff's citations omitted). Essentially, Plaintiff contends that Napoli should have done a better investigation following the alleged assault on March 9, 2009. *See, id*. at 16-17. However, Plaintiff has not shown that Napoli was involved in investigating the March 9th incident. Moreover, even assuming that discrepancies in reports would have alerted Napoli to the fact that corrections officers had assaulted Plaintiff, Napoli would only have learned of the alleged assault after the fact. The Court has considered all of Plaintiff's arguments, and finds that Napoli is entitled to summary judgment.

*Defendants' Motion to Revoke IFP Status and Dismiss*

The Court will now consider Defendants' motion to revoke Plaintiff's *in forma pauperis* status and to dismiss the action. Clearly, the Court may revoke a prisoner plaintiff's *in forma pauperis* status if it determines that he is in violation of the three strikes provision, which the Court already set forth above. *See, generally, Harris v. City of New York*, 607 F.3d 18 (2d Cir. 2010); *Collazo v. Pagano*, 656 F.3d 131 (2d Cir. 2011). In this case, Plaintiff admits that he has at least two strikes, from the Northern District of New York. The question is whether the third alleged strike, involving this Court's dismissal of *Perkins v. Doe*, 08-CV-6257 CJS (Fe) (W.D.N.Y.) is also a strike. As discussed earlier, Plaintiff contends that such dismissal was not a strike, because the dismissal was for lack of jurisdiction. However, even assuming *arguendo* that

14

Plaintiff is correct that a dismissal for lack of jurisdiction does not qualify for a strike, which this Court need not decide, he is incorrect about the reason for the dismissal. This Court dismissed *Perkins v. Doe* for failure to state a claim upon which relief may be granted, and therefore such dismissal would qualify as Plaintiff's third strike under 28 U.S.C. § 1915(g).  Moreover, Plaintiff is not entitled to the statutory exception, since his pleadings did not indicate that he was "under imminent danger of serious physical injury" at the time he commenced the action.  Accordingly, Plaintiff's *in forma pauperis status* is revoked.   Plaintiff must pay the applicable filing fee of three hundred fifty dollars ($350) within thirty days of the filing of this Decision and Order, and his failure to pay such fee will result in a dismissal of this case without further order of the Court.

## CONCLUSION

Napoli's motion for summary judgment [#62] is granted.  Plaintiff's application for injunctive relief [#80] is denied.  Defendants' motion to dismiss [#85] is granted in part and denied in part as follows: Plaintiff's *in forma pauperis status* is revoked.   Plaintiff must pay the applicable filing fee of three hundred fifty dollars ($350) within *thirty days* of the filing of this Decision and Order, *and his failure to pay such fee will result in a dismissal of this case without further order of the Court*.

In the event that this action is dismissed for Plaintiff's failure to pay the filing fee, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the

United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

So Ordered.

Dated:      Rochester, New York
            December 16, 2011

                                        ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge